CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

OCT 30 2008

JOHN F. CORCORAN, CLERK
BY:
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| TERRY DALE DUNCAN, #319591, ) | |
| Plaintiff, ) | Civil Action No. 7:08-cv-00564 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| UNITED STATES ) | |
| DEPARTMENT OF STATE, ) | By: Hon. James C. Turk |
| Defendant. ) | Senior United States District Judge |

Plaintiff Terry Dale Duncan, a Virginia inmate proceeding pro se, has filed an affidavit and cover letter, stating that he has voluntarily renounced his United States citizenship, but that State Department officials' refuse to issue proper certification to recognize his renunciation because he is still within the boarders of the country. Duncan claims that this government action violates his right to Due Process. Upon review of the complaint, the court concludes that the action should construed as a civil rights action under 42 U.S.C. § 1983 and summarily dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.[1]

Duncan claims that he "abandoned" his United States "citizenship and birthright" in 2004, when he legally changed his name to Ame'de'us James Jiggy LysLord, instead of Terry Dale Duncan.[2] His goal in filing the current complaint is to obtain a "certificate of loss of nationality."

---

[1] Under this provision, the court may dismiss an action filed by a prisoner against a governmental entity at any time as frivolous, malicious or for failure to state a claim upon which relief may be granted.

[2] He complains that the prison officials at the prison where he is housed refuse to allow him to use his new name for some things, and the state court where he was convicted will not change its records to reflect his name change. However, he states that he is not seeking to press these assertions as claims in this action. He is advised that before he could bring a civil action concerning the prison's alleged failure to accommodate his use of his new name, he would first need to exhaust available administrative remedies at the prison, as required pursuant to 42 U.S.C. § 1997e(a).

1

His submissions indicate that he wrote to the Department of State of his intention to renounce his citizenship. In February 2008, in response to Duncan's request, an officer of the Office of Policy Review and Interagency Liaison in the Bureau of Consular Affairs informed him that to achieve effective renunciation of citizenship, Duncan must obtain a Certificate of Loss of Nationality, which is issued by the Department of State only after a careful review of the facts determines that the individual has met the established criteria. The officer also states that "<u>a person may not renounce U.S. citizenship while present in the United States</u>, unless the United States is in a state of war. Since the United States is not currently in a state of war, U.S. citizenship must be renounced abroad."

The Fourteenth Amendment of the United States Constitution provides that "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States." The Amendment does not expressly provide any constitutional right for such persons to give up their citizenship or set forth procedures for doing so. The Supreme Court has recognized, however, that a United States citizen has a right to renounce or abandon his birthright of citizenship. See Nishikawa v. Dulles, 356 U.S. 129, 139 (1958) (J. Black, concurring). At the same time, the Court held that Congress has broad authority to set the conditions and procedures that an individual must satisfy in order to renounce his citizenship. Id.; Koos v. Holm, 204 F. Supp.2d 1099, 1107 (W.D. Tenn. 2002) (citing other cases).

Title 8 of the United States Code, Section 1481, governs the procedure of renouncing one's citizenship. Under this statute, a United States citizen "shall lose his nationality by voluntarily performing" any one of several listed acts "with the intention of relinquishing United States nationality." §1481(a). The listed acts include being naturalized as a citizen of another

country, taking an oath of allegiance or serving in the armed forces of another country, or committing an act of treason against this country. Id. A citizen may also renounce citizenship rights by making a formal written renunciation of nationality before a diplomatic or consular officer of the United States in a foreign country, or if the United States is at war, by making a formal written renunciation of nationality before the United States Attorney General or his designee who must approve the renunciation as not adverse to the national defense, § 1481(a)(5) & (6).

It is well established that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights" as part of the penalty for one's criminal conviction. Price v. Johnston, 334 U.S. 266, 285 (1948). Moreover, courts have uniformly held that an incarcerated citizen has no right to compel governmental officials to transport him out of the country in order to facilitate his renunciation of citizenship. See Koos, 204 F. Supp.2d at 1109 (citing other cases).

Under these principles, it is clear that Duncan has no claim that he has been wrongfully deprived of any constitutional or statutory rights. Although he has a right to renounce his United States citizenship, he may do so only by complying with the procedures mandated by Congress. With one exception, a threshhold requirement under these procedures is that the citizen be outside the borders of the United States in order for his renunciation to take effect. Duncan's exercise of his right to renounce citizenship is currently subject to the conditions of his lawful sentence of incarceration. As a state prisoner, he cannot voluntarily leave the country to fulfill any of these renunciation procedures, and he has no right to compel prison officials to transport him outside the country for this purpose. Moreover, the war time exception to the requirement

3

that renunciation occur outside the country is not currently applicable. As stated, Duncan's request to renounce his citizenship under § 1481(a)(6) has been denied by an appropriate federal official on the ground that the country is not at war. Based on the foregoing, the court finds no ground upon which plaintiff has been denied due process protections. He simply has no entitlement to renounce his citizenship at this time under § 1481(a), because he cannot meet statutorily mandated conditions for doing so. Accordingly, the court will dismiss the complaint, pursuant to §1915A(b)(1), for failure to state a claim. An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 30th day of October, 2008.

*[signature]*
Senior United States District Judge